IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 16–CR-30010-NJR-2 |
| ) | |
| ) | |
| CARLOS CHILDRESS, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on a Motion to Suppress filed by Defendant Carlos Childress (Doc. 73). For the reasons stated below, the motion is denied.

### FINDINGS OF FACT

On October 22, 2015, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") enlisted an undercover informant to purchase a "Glock" .357 caliber pistol from Defendant Carlos Childress (Doc. 73). The informant was unsuccessful. A few days later, the informant tried again of his own accord, unbeknownst to the ATF (Doc. 73). Instead of purchasing the Glock, however, the informant stole it from Childress (Doc. 73). Nearly three months later, on January 12, 2016, ATF agents went to the residence of Childress's grandmother, where he often stayed (Doc. 73). The agents searched Childress's bedroom and found ammunition and Tramadol pills (Doc. 73). The agents requested to meet with Childress, and later that same day, his grandmother drove him to the ATF office in Fairview Heights, Illinois (Doc. 73).

While at the ATF office, Childress gave a videotaped statement, a copy of which was provided to the Court. Childress acknowledged that he agreed to be interviewed of his own free will. He stated that he had not been forced, pressured, or coerced in any way to attend the interview, and he acknowledged that no one had promised him anything in exchange for the interview. Childress was told that he was not under arrest, but the agents nevertheless advised him of his rights. Childress was provided with a Statement of Rights form, which he read aloud, initialing each line as he read. Specifically, he read aloud that he had the right to remain silent; that anything he said could be used against him in court; that he had the right to talk to a lawyer and to have a lawyer present during questioning; that a lawyer would be appointed for him if he could not afford a lawyer; and that if he decided to answer questions without a lawyer present, he had the right to stop answering anytime. Childress also read aloud and signed a waiver form that stated: "I have read this statement of my rights or it has been read to me, and I understand these rights. At this time I am willing to answer questions without a lawyer present. No promises or threats have been made to me, and no pressure or force of any kind has been used against me."

During the pertinent portion of the interview, the ATF agents showed Childress a picture of a firearm and asked him if it looked familiar. Childress answered in the affirmative and stated that it resembled a firearm he had received from his "cousin," who went by the name "Doo Man," in early October 2015. Childress stated that "Doo Man" was trying to get some money for his son, so he gave Childress the gun to sell. Childress claimed that he agreed to take the gun and sell it because he was concerned

that "Doo Man" was making irresponsible and reckless choices and was going to get into trouble. Childress stated that he attempted to sell the firearm on or about October 24, 2015, but the potential buyer robbed him at gunpoint and took the firearm. After the interview was over, Childress left the ATF office.

On March 22, 2016, the grand jury returned a Superseding Indictment charging Childress with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Doc. 15). (Childress has a previous felony conviction for residential burglary). Childress filed a pretrial motion on July 4, 2016, seeking to suppress his videotaped statements (73). The Government filed a timely response in opposition to the motion (Doc. 86).

## DISCUSSION

Childress seeks to suppress his videotaped statement on the ground that it was coerced in violation of the Fifth Amendment's privilege against self-incrimination and guarantee of due process (Doc. 73). In the alternative, Childress argues that if the Court determines his confession was voluntary, that it is nevertheless unreliable (Doc. 73).

The motion to suppress can be decided without a hearing because a copy of Childress's videotaped statement was provided to the Court, and there does not appear to be any disputed issues of material fact (*see* Docs. 73, 86). *United States v. Greve*, 490 F.3d 566, 572 (7th Cir. 2007) (In order to obtain an evidentiary hearing on a motion to suppress, a defendant is "required to provide sufficient information to enable the court to conclude that a substantial claim was presented and that there were disputed issues of material fact which would affect the outcome of the motion.") (citation and internal

alterations omitted).

"A confession is voluntary and admissible if, 'in the totality of circumstances, it is the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will.'" *United States v. Stadfeld*, 689 F.3d 705, 709 (7th Cir. 2012) (quoting *United States v. Vallar,* 635 F.3d 271, 282 (7th Cir. 2011)). In determining whether a defendant's confession was voluntary, the court analyzes coercion "from the perspective of a reasonable person in the position of the suspect" and considers the following factors: "the defendant's age, education, intelligence level, and mental state; the length of the defendant's detention; the nature of the interrogations; the inclusion of advice about constitutional rights; and the use of physical punishment, including deprivation of food or sleep." *United States v. Sturdivant*, 796 F.3d 690, 695 (7th Cir. 2015) (citing *United States v. Huerta,* 239 F.3d 865, 871 (7th Cir. 2001)).

Childress argues that his statement was involuntary because his interview included "discussions concerning his opportunity to benefit from providing an incriminating statement" (Doc. 73, p. 3). "A false promise of lenience is 'an example of forbidden [interrogation] tactics, for it would impede the suspect in making an informed choice as to whether he was better off confessing or clamming up.'" *United States v. Stadfeld*, 689 F.3d 705, 709 (7th Cir. 2012) (quoting *United States v. Baldwin,* 60 F.3d 363, 365 (7th Cir. 1995)) (alteration in original). Childress does not identify any specific statements that were made or even provide any details about the general nature of the discussion or the benefit that he may have received. As previously mentioned,

Childress's interview was videotaped. The Court has reviewed the video; no overt promises of leniency were made. The Court also cannot identify any statement, comment, or question that could reasonably be construed as an implicit promise of leniency. In fact, Childress acknowledged that no one had promised him anything in exchange for the interview. To the extent the alleged statements occurred off-camera, Childress has not indicated what those statements may have been. This argument is simply too vague and undeveloped to warrant a pre-trial hearing or justify suppression. *See, e.g., United States v. Hussein*, 664 F.3d 155, 161 n.2 (7th Cir. 2011) ("It is not enough to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.") (citation and internal quotation marks omitted); *United States v. Toro*, 359 F.3d 879, 885 (7th Cir. 2004) (holding that defendant has "the burden of presenting 'definite, specific, detailed, and nonconjectural facts' to establish that there was a disputed issue of material fact as to the voluntariness of his confession." (quoting *United States v. Rodriguez,* 69 F.3d 136, 141 (7th Cir. 1995)).

Childress also argues that his statement was involuntary because he "was in fear of his grandmother being charged with some sort of crime if he did not tell the ATF agents what they wanted to hear" (Doc. 73, p. 4). But Childress does not explain what led him to believe that his grandmother would be arrested if he did not make an incriminating statement (*see* Doc. 73). After reviewing the videotaped interview, the Court can say with confidence that the agents never said anything to Childress that would reasonably lead him to believe that. Simply put, it is not at all clear why Childress

held this belief. And there is nothing that suggests a reasonable person in Childress's position would have felt the same way. Accordingly, the Court concludes that Childress's subjective belief, without any evidence of actual improper police conduct, is insufficient to demonstrate that his statement was involuntary. *United States v. Stadfeld*, 689 F.3d 705, 709 (7th Cir. 2012) ("[C]oercive police activity is a necessary predicate to [a] finding that a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment." (citing *United States v. Huerta,* 239 F.3d 865, 871 (7th Cir. 2001))).

In sum, the Court finds that Childress's confession was voluntary and not coerced. Childress claims that even if the Court determines his confession was voluntary, it was nevertheless unreliable (Doc. 73, p. 4). The reliability of a confession, however, is a question for the jury. *Crane v. Kentucky*, 476 U.S. 683, 688 (1986). Therefore, this argument cannot be used to justify pretrial suppression of Childress's confession.

## CONCLUSION

The Motion to Suppress filed by Defendant Carlos Childress (Doc. 73) is **DENIED.**

**IT IS SO ORDERED.**

**DATED:** August 29, 2016

**NANCY J. ROSENSTENGEL**
**United States District Judge**